No. 23-55418

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

RODNEY WOODLAND,

*Plaintiff-Appellant*,

v.

MONTERO LAMAR HILL,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Central District of California
No. 2:22-cv-03930-AB-MRWx
Hon. André Birotte, Jr., United States District Judge

_____

## APPELLANT'S OPENING BRIEF

_____

Michael R. Shapiro
LAW OFFICES OF MICHAEL SHAPIRO
11500 W. Olympic Blvd., Suite 400
Los Angeles, California 90064
(310) 472-8900
MickeyIMC@AOL.com

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorneys for Appellant*

## ORAL-ARGUMENT STATEMENT

Plaintiff-Appellant Rodney Woodland respectfully submits that oral argument would be helpful here.

This appeal implicates well-established doctrines in copyright—the infringement doctrines of similarity and of copying. Yet, this appeal also involves somewhat unusual facts of serial infringement by a single defendant. Here, Plaintiff posted highly distinctive works to Instagram. There, one after another, in rapid succession, over ten such works appeared on *Defendant'*s Instagram, with Defendant remaking Plaintiff's photography, adopting Plaintiff's poses, his costumes, his lighting, his makeup, *etc.*

Oral argument would be appropriate to explore how these serial similarities affect copyright's similarity analysis and the strength of inferences that these serial similarities aren't just coincidences.

## RULE 26.1 DISCLOSURE STATEMENT

(a)     Appellant Rodney Woodland is a natural person.


(b)     This is not a criminal case.


(c)     This is not a bankruptcy case.


Date: May 28, 2024                    Respectfully submitted,

                                      */s/ Gregory Keenan*
                                      Gregory Keenan

                                      *Attorney for Appellant*

# TABLE OF CONTENTS

**Page**

ORAL-ARGUMENT STATEMENT .......................................................... ii

RULE 26.1 DISCLOSURE STATEMENT .............................................. iii

TABLE OF AUTHORITIES ............................................................... vi

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ......................................................... 4

STATEMENT OF ISSUES .................................................................... 5

STATEMENT OF THE CASE ................................................................ 6

    I.     DOCTRINAL BACKGROUND ....................................................... 6

    II.    FACTUAL BACKGROUND .......................................................... 8

        A.    Mr. Woodland's Posts ................................................... 8

        B.    Mr. Hill's Copying ........................................................ 9

        C.    Facts About Instagram ............................................... 10

        D.    Proceedings Below ...................................................... 12

SUMMARY OF ARGUMENT ............................................................ 13

STANDARD OF REVIEW ................................................................. 15

ARGUMENT ................................................................................... 16

    I.     THE DISTRICT COURT ERRED ON SIMILARITY BECAUSE MR.
        WOODLAND'S UNIQUE PHOTOGRAPHY, POSES, COSTUMES, MAKE
        UP, AND LIGHTING ARE ALL PROTECTIBLE EXPRESSION UNDER
        LONGSTANDING PRINCIPLES OF COPYRIGHT LAW. ............................... 16

iv

A. The District Court overlooked key copyright principles regarding protectible expression in photography and artistic poses. ..........................................................................16

B. Under these longstanding copyright principles, the copied expression is actionable and shouldn't have been dismissed. ...................................................................35

C. The District Court's cited authorities do not support its dismissal and some support reversal as to similarity. ...............55

II. THE DISTRICT COURT ERRED ON COPYING BECAUSE MR. HILL'S USE OF IDENTICAL AND RARE EXPRESSION, A DOZEN TIMES, IN A SHORT TIMEFRAME IS SUFFICIENT TO INFER THAT THESE SIMILARITIES ARE NOT JUST COINCIDENCE. ........................................58

A. The District Court overlooked key copyright principles regarding how to distinguish likely copying from coincidence...............................................................58

B. Under these principles, there are strong bases—similarities, volume, rarity, timing, availability—to infer copying.............68

CONCLUSION ........................................................................78

STATEMENT OF RELATED CASES ................................................79

FORM 8 CERTIFICATE OF COMPLIANCE ........................................80

CERTIFICATE OF SERVICE ............................................................81

# TABLE OF AUTHORITIES[1]

**Page(s)**

**Cases**

AFG Media Ltd.. v. Poptrend-Official,
  2023 U.S. Dist. LEXIS 230686 (W.D. Pa. Dec. 29, 2023) ...........................27

Altmann v. Republic of Aus.,
  317 F.3d 954 (9th Cir. 2002) ........................................................................76

Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,
  11 F.4th 26, 33 (2d. Cir. 2021) ....................................................................27

Art Attacks Ink, LLC v. MGA Enter. Inc.,
  581 F.3d 1138 (9th Cir. 2009) ......................................................................76

Attia v. Society of the N.Y. Hosp.,
  201 F.3d 50 (2d Cir. 1999) ...........................................................................32

Batiste v. Lewis,
  976 F.3d 493 (5th Cir. 2020) ................................................................ 63, 68

Bouchat v. Baltimore Ravens, Inc.,
  241 F.3d 350 (4th Cir. 2000) ........................................................................59

Briggs v. Blomkamp,
  70 F. Supp. 3d 1155 (N.D. Cal. 2014) .........................................................61

Burrow-Giles Lithographic Co. v. Sarony,
  111 U.S. 53 (1884) ............................................... 21, 25, 26, 27, 31

Carell v. Shubert Org., Inc.,
  104 F. Supp. 2d 236 (S.D.N.Y. 2000) ..........................................................28

Cavalier v. Random House, Inc.,
  297 F.3d 815 (9th Cir. 2002) ...................................................................7, 34

Chosun Int'l v. Chrisha Creations, Ltd.,
  413 F.3d 324 (2d. Cir. 2005) ........................................................................27

Composite Effects, LLC v. All Elite Wrestling, LLC,
  2023 U.S. Dist. LEXIS 85542, (E.D. La. May 16, 2023) .............................18

---

[1] All emphasis is added unless otherwise indicated. Internal quotations marks, citations, brackets, ellipses are frequently omitted for ease of reading.

Conrad v. AM Cmty. Credit Union,
    750 F.3d 634 (7th Cir. 2014) ..........................................................27

Design Basics, LLC v. Lexington Homes, Inc.,
    858 F.3d 1093 (7th Cir. 2017) ............................................... 59, 65

Eldred v. Ashcroft,
    537 U.S. 186 (2003)........................................................................30

Ets-Hokin v. Skyy Spirits, Inc.,
    225 F.3d 1068 (9th Cir. 2000) ............................... 22, 25, 26, 31

Experian Info. Sols., Inc. v. Nationwide Mktg. Servs.,
    893 F.3d 1176 (9th Cir. 2018) ......................................................17

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
    499 U.S. 340 (1991)............................................................ 6, 21, 29

Folkens v. Wyland Worldwide, LLC,
    882 F.3d 768 (9th Cir. 2018) .................................................. 32, 57

General Universal Systems, Inc. v. Lee,
    379 F.3d 131 (5th Cir. 2004) ........................................................17

Gillespie v. AST Sportswear, Inc.,
    2001 U.S. Dist. LEXIS 1997 (S.D.N.Y. Feb. 22, 2001) ..............24

Gray v. Hudson,
    28 F.4th 87 (9th Cir. 2022) .............................................................6

Gross v. Seligman,
    212 F. 930 (2d Cir. 1914) ........................................................ 23, 34

Hanagami v. Epic Games, Inc.,
    85 F.4th 931, 938 (9th Cir. 2023).................... 15, 17, 24, 29, 32, 64

Harper & Row, Publrs. v. Nation Enters.,
    471 U.S. 539 (1985).......................................................................33

Horgan v. Macmillan, Inc.,
    789 F.2d 157 (2d Cir. 1986) ..........................................................25

Jorgensen v. Epic/Sony Records,
    351 F.3d 46 (2d Cir. 2003) ..................................................... 59, 63

Kaseberg v. Conaco, LLC,
    260 F. Supp. 3d 1229 (S.D. Cal. 2017) ........................... 71, 74, 77

vii

Khoja v. Orexigen Therapeutics, Inc.,
  899 F.3d 988 (9th Cir. 2018) .........................................................................15

Klauber Bros., Inc. v. Roma Costumes, Inc.,
  2023 U.S. Dist. LEXIS 100345 (C.D. Cal. June 7, 2023) ..................... 18, 19

L.A. News Serv. v. Tullo,
  973 F.2d 791 (9th Cir. 1992) ..................................... 21, 22, 27, 34

L.A. Printex Indus. v. Aeropostale, Inc.,
  676 F.3d 841 (9th Cir. 2012) ........................................... 29, 31, 33

Landsberg v. Scrabble Crossword Game Players, Inc.,
  736 F.2d 485 (9th Cir. 1984) .........................................................................33

Malibu Textiles, Inc. v. Label Lane Int'l, Inc.,
  922 F.3d 946 (9th Cir. 2019) ........................................... 17, 18, 19

Meshwerks, Inc. v. Toyota Motor Sales U.S.A.,
  528 F.3d 1258 (10th Cir. 2008) ....................................................................23

Mountain v. Mehron, Inc.,
  2018 U.S. Dist. LEXIS 226318 (C.D. Cal. Aug. 15, 2018) .........................28

Mourabit v. Klein,
  816 F. App'x 574 (2d. Cir. 2020) .................................................................28

Novelty Textile Mills v. Joan Fabrics Corp.,
  558 F.2d 1090 (2d. Cir. 1977) ......................................................................32

Palmer v. Braun,
  287 F.3d 1325 (11th Cir. 2002) ....................................................................33

Rentmeester v. Nike, Inc.,
  883 F.3d 1111 (9th Cir. 2018) ......................................... 23, 32, 56

Rogers v. Koons,
  960 F.2d 301 (2d Cir. 1992) ............................................. 22, 23, 25

Satava v. Lowry,
  323 F.3d 805 (9th Cir. 2003) .........................................................................24

Seven Oaks Millwork v. Us,
  483 F. Supp. 3d 1192 (M.D. Fla. 2020) .......................................................61

Shaw v. Lindheim,
  919 F.2d 1353 (9th Cir. 1990) ......................................................................32

Sheldon v. Metro-Goldwyn Pictures Corp.,
    81 F.2d 49 (2d Cir. 1936) ........................................................ 31, 34

SHL Imaging, Inc. v. Artisan House, Inc.,
    117 F. Supp. 2d 301 (S.D.N.Y. 2000) ............................................23

Silvertop Assocs. v. Kangaroo Mfg.,
    931 F.3d 215 (3d Cir. 2019) .........................................................27

Skidmore v. Led Zeppelin,
    952 F.3d 1051 (9th Cir. 2020) ............................. 6, 55, 62, 63, 64, 66, 68, 72

Star Athletica, L.L.C. v. Varsity Brands, Inc.,
    580 U.S. 405 (2017) ...................................................................28

Starz Ent., LLC v. MGM Domestic TV Distrib., LLC,
    39 F.4th 1236 (9th Cir. 2022) .......................................................15

Three Boys Music Corp. v. Bolton,
    212 F.3d 477 (9th Cir. 2000) .......................................................56

Unicolors, Inc. v. Urban Outfitters, Inc.,
    853 F.3d 980 (9th Cir. 2017) .......................................................32

United States v. Hamilton,
    583 F.2d 448 (9th Cir. 1978) .......................................................22

Whyte Monkee Prods., LLC v. Netflix, Inc.,
    601 F. Supp. 3d 1117 (W.D. Okla. April 27, 2022) .....................................24

**Statutes**

17 U.S.C. §102(a)(4) ...............................................................................24

**Other Authorities**

"Cindy Sherman: Appropriation and the Archive," The Guggenheim ..................36

"How Instagram Feed Works," Instagram ..............................................................11

"Recommendation eligibility on Instagram," Instagram ........................................10

D. Meyerend, "The algorithm knows I'm Black: from users to subjects,"
    *Media, Culture & Society*, (2023) ................................................75

Kelly Sidley, "The Heroines of Cindy Sherman's Photographs,"
    Sotheby's (Sept. 18, 2019) .........................................................35

Search & Explore," Instagram ...................................................................10

**Treatises**

GOLDSTEIN ON COPYRIGHT.................................................................... 72, 74

NIMMER ON COPYRIGHT ......................................... 6, 7, 24, 60, 61, 63, 64

**INTRODUCTION**

Often, there's just one work per side.

In a fairly typical copyright-infringement case, a defendant stands accused of infringing a single copyrighted work. The plaintiff comes to court, proffering both her one infringed-upon work and also proffers what she asserts is the infringing work or material used by the defendant. If the case doesn't quickly resolve and the works aren't fully identical, the parties will likely proceed to dispute the copyright elements of similarity (*i.e.*, whether the works exhibit legally actionable similarities of protectible artistic expressions) and copying (*i.e.*, whether the facts suggest that the defendant actually copied from plaintiff's work or, rather, that the similarities are merely coincidences).

This appeal is different because of the number of works at issue—*i.e.*, the serial infringement.

Here, there's not just one infringed-upon work. There's <u>*over ten*</u> by the same Defendant. Plaintiff is a professional artist who creates vivid photographs— depicting himself in tasteful nudes where he contorts his body into strange poses, dons his own bespoke costumes, applies his own makeup, and takes his own self-photography. After editing and polishing, Plaintiff posts his works to Instagram. There, one after another, over ten such works appeared on <u>*Defendant's*</u> Instagram, with Defendant taking Plaintiff's poses, his costumes, his lighting, his makeup, *etc.*

1

Defendant's works duplicate central aspects of Plaintiff's works over ten times. So, this isn't a typical one-work-per-side infringement case, but a case of serial infringement. Insofar as over ten distinctive works are at issue, this appeal poses questions about how serial similarities of highly distinctive expression showing up in short succession affect copyright-infringement doctrines, specifically similarity and copying. In a nutshell, serial similarities matter and are more than the sum of their parts.

As for similarities of protectible expression, it's always been true that the amount of protectible expression taken or "appropriated" by the infringing work matters. It all adds up. Yet, further still, there's an additional synergy that goes beyond merely adding up the taken expression. Artistic selection and coordination across works is also protectible in copyright. In other words, the similarities across the works mutually reinforce the conclusion that the Defendant's copying is actionable—or that a factfinder could so conclude. When a single defendant copies not just one work, but an entire selection of them, that strongly bolsters a copyright-infringement case.

As for whether copying actually occurred, it's always been true that the amount of similarities bolsters the likelihood that such similarities aren't happenstance. And, here similarities abound—not just in one work but across ten. With each successive work copied, the odds of coincidence correspondingly wilt.

Here, there were over ten highly distinctive works, showing up in short succession, by one defendant, adopting identical poses, costumes, lighting, makeup, *etc.* Taken together, these serial similarities mutually reinforce a strong conclusion that actual copying occurred here. A reasonable person would so infer because the large volume of similarities compound upon one another. In short, quantity of similarity matters a great deal in copyright. It matters when deciding similarity and it matters when deciding actual copying. It matters even more when dealing with serial infringement.

\* \* \* \* \*

Below, the District Court made several crucial legal errors when applying this Court's law of similarity and copying. Those should be corrected—and reversed. Yet perhaps the District Court's biggest error was ignoring the elephant in the room: this case is not ten separate cases of infringement of individual works by different defendants, but rather one case of serial infringement by a single defendant. For compelling reasons, copyright's doctrines of similarity and copyright's doctrines of copying should respond to and address the serial nature of Defendant's copyright infringement.

This Court should reverse and remand.

3

## JURISDICTIONAL STATEMENT

(A)   This civil action is a copyright-infringement case.   ER-233¶17-234¶21; ER138¶20-139¶24.   The District Court had exclusive federal-question jurisdiction.   See 28 U.S.C. §§ 1331, 1338(a).

(B)   The District Court entered final judgment.   ER-4-5.   This Court has appellate jurisdiction.   See 28 U.S.C. § 1291.

(C)   The District Court entered judgment on April 25, 2023.   ER-4-5.   Six days later, on May 1, 2024, the notice of appeal was timely filed.   ER-251-253; see 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

(D)   This appeal is from a final order and judgment.   ER-4-5 (judgment); ER-6-14 (case-dispositive order).

4

## STATEMENT OF ISSUES

1. _Substantial Similarity_: Whether the District Court erred in holding that similarities over ten highly distinctive copyrighted works, taken individually and together, were not similar as a matter of law and were not legally actionable copying.

2. _Actual Copying_: Whether the District Court erred in overlooking critical facts—critically, the pure volume of serial similarities in over ten separate photographs posted in a short timeframe—when holding as a matter of law that there was no copying here.

# STATEMENT OF THE CASE

## I.  DOCTRINAL BACKGROUND

By way of background, copyright-infringement claims require a showing of "two elements": "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." E.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Gray v. Hudson, 28 F.4th 87, 96 (9th Cir. 2022) (same quoting Feist).  Here, the first element isn't seriously in dispute.  ER-8-10; ER-50; cf. Feist, 499 U.S. at 361 ("The first element is not at issue here[.]").  It has _not_ been disputed by Defendant that Plaintiff created his own art or that his art is validly copyrightable.

Rather, the present dispute has centered on the second element of copyright infringement.  This second elements has two subparts or components.  These two "components" go by different names in the caselaw, sometimes called "copying" and "unlawful appropriation[,]" e.g., Skidmore v. Led Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) ("The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'"), with a leading treatise characterizing them as "factual copying" and "legal copying[,]" NIMMER ON COPYRIGHT §§ 13D.03-07 (factual copying); 13D.10-20 (legal copying).

Both are at issue in this appeal.

Unlawful appropriation examines whether the works' similarities are legally actionable under what this Court has termed the "extrinsic" or objective portion of the test. See, e.g., Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002) ("We employ a two-part analysis in this circuit—an extrinsic test and an intrinsic test—to determine whether two works are substantially similar. The 'extrinsic test' is an objective comparison of specific expressive elements. The test focuses on articulable similarities[.]"). Unlawful appropriation is often referred to herein as "similarity" doctrine for shorthand insofar as it turns directly on a direct comparison of the works' similarities. Unlawful appropriation is addressed in Argument Section I, *infra*.[2]

Likewise, copying doctrine examines whether there is direct evidence that the defendant saw the plaintiff's work or whether the facts support the inference that the similarities are not coincidental but due to such a viewing by defendant. See 4 NIMMER ON COPYRIGHT § 13D.05 (2024) ("[P]laintiffs typically lack direct evidence of actual copying. Rather than dooming their cases inexorably to fail, that deficit forces those plaintiffs to rely on indirect evidence in order to satisfy the necessary element of actual copying.").

With this background in mind, we turn to a concise statement of the facts.

---

[2] The intrinsic test is not at issue on appeal. See, e.g., ER-10, ER-50.

**II.** **FACTUAL BACKGROUND**

The facts here are relatively simple: Mr. Woodland created works and then Mr. Hill discovered them, copied them, and posted them to his own Instagram account. Yet, the key distinguishing feature of this case is serial copying by Defendant of eleven works, copying not only the works themselves but also the selection, arrangement, and coordination of Plaintiff. See ER-144-153 (showing Plaintiff's infringed-upon works and Defendant's infringed works). Some features of Instagram that readily distinguish it from material lying latently on the web also distinguish this case.

**A.** **Mr. Woodland's Posts[3]**

Plaintiff-Appellant Rodney Woodland is an artist conceiving and creating distinctive art using self-photography, unusual poses, eye-grabbing costumes, makeup, *etc.* ER-132¶15-136¶15h. He has personally created all of his works at issue in this lawsuit. ER-128¶9; ER-132¶15. He posted his pertinent works to Instagram upon completing them in the timeframe, from August 2018 to July 2021. ER-130¶13-ER-132¶14k. Plaintiff's eleven infringed-upon works are found at ER-144-153.

---

[3] These facts are taken from the complaint and deemed true.

## B.    Mr. Hill's Copying[4]

Defendant-Appellee Montero Lamar Hill is a recording artist.  ER-128¶9.
He too uses Instagram.  ER-128¶9.  As alleged, after Plaintiff posted the works,
Defendant found them, viewed them, and began serial copying eleven of Plaintiff's
distinctive creations—wholesale copying Plaintiff's poses, costumes, lighting,
makeup, photography, *etc.*  ER-129¶¶11-12; ER-136¶16-ER-137¶17.  Specifically,
Defendant posted these materials to Instagram and otherwise used the works in a
commercial manner mostly in July, September, and October 2021—with one post
made earlier on March 28, 2021.  ER-130¶14-ER-131¶k; ER-137¶18-138¶19.  As
with Plaintiff's infringed-upon works, Defendant's infringing works are also found
at ER-144-153.

When Plaintiff inquired regarding these highly similar posts, Defendant
simply removed them from his Instagram, but made no offer of a reasonable
royalty and adopted a litigation posture.

---

[4] These facts are taken from the complaint and deemed true.

### C.    Facts About Instagram[5]

There are four key facts about Instagram to keep in mind when deciding this appeal:

1. Instagram is a social-media platform.  Unlike material that's latently online and only likely to be accessed via someone affirmatively searching for it via a search engine (Google, Bing), Instagram actively distributes posted material to others, including those you don't follow.  <u>See</u>, <u>e.g.</u>, "[Recommendation eligibility on Instagram](#)," Instagram (last accessed May 28, 2024) ("We make recommendations on Instagram to help people discover new communities and content from accounts they don't already follow. When your posts are recommended on Instagram, they can show up in places like Explore, Reels and Feed Recommendations to people who don't already follow you.").

2. Instagram's scale—billions of posts and over a billion users—may seem to entail that anyone finding any specific content on there like a needle in the haystack.  Yet, Instagram's "Search & Explore" functionality is specifically designed to spread content to those who may be interested but don't follow you.  <u>See</u>, <u>e.g.</u>, "[Search & Explore](#)," Instagram (last accessed May 28, 2024).

---

[5] These facts are subject to judicial notice.

3. Both Plaintiff and Defendant are Instagram users. E.g., ER-128¶9-ER-129¶10. Similarities in their expression and taste make them more likely to run across each other on Instagram. See, e.g., "How Instagram Feed Works," Instagram (last accessed May 28, 2024).

4. Finally, "likes" of an Instagram post are not the same thing as "views." It's entirely possible—and frequent—that Instagram users will view a post but not like for any myriad of reasons. This fact is relevant here because, while counting "likes" may approximate distribution, they don't measure it. It's possible a work generates far more views than likes. Moreover, it's entirely possible that an infringer views a public account and its posts—*without* liking it or leaving any meaningful trace, except to Instagram.

These distinctions are meaningful insofar as the District Court drew a false equivalence between content being merely online and content being on Instagram. ER-11 ('on the Internet"). The inference of copying here is <u>not</u> predicated purely upon fact of public availability of Instagram. Moreover, the District Court overlooked key features of Instagram that render Defendant far more likely to access Plaintiff's works, especially in light of Plaintiff and Defendant being part of similar communities (who they follow, what they view and like, who they interact with, *etc.*).

### D.    Proceedings Below

Through counsel, Mr. Woodland contacted Mr. Hill.  Mr Hill immediately adopted a litigation posture.  He never offered Mr. Woodland a reasonable royalty, or any compensation at all.

Left with no other option, Mr. Woodland sued for copyright infringement. ER-227-238 (first-amended complaint); ER-239-250 (infringed & infringing works).  The Parties litigated a Rule 12(b)(6) motion.  ER-193-195 (motion); ER-196-226 (brief); ER-173-192 (opp.); ER-154-173 (reply).  The District Court issued a written order granting this first Rule 12(b)(6) motion, but also granting Mr. Woodland leave to amend.  ER-58; ER-47-58.  Mr. Woodland filed an amended complaint.  ER-126-142 (second-amended complaint); ER-143-153 (infringed & infringing works).

Then, the Parties litigated a second Rule 12(b)(6) motion.  ER-94-95 (motion); ER-95-125 (brief); ER-78-93 (opposition); ER-59-77 (reply).  The District Court heard oral argument and took the matter under advisement.  ER-15-39 (transcript).  Later, the District Court granted the second Rule 12(b)(6) motion, but this time without granting Mr. Woodland leave to amend.  ER-14; ER-7-14. The District Court entered final judgment.  ER-4-5.  Mr. Woodland timely filed a notice of appeal.  ER-251-253.

## SUMMARY OF ARGUMENT

I.      Below, the District Court contravened long-standing copyright principle, when improperly excluding numerous expressive, protectible elements of Plaintiffs' photographs when conducting the extrinsic test–i.e., the first step of this Court's substantial similarity analysis.  Indeed, photograph cases stretching back over a century have repeatedly recognized that original poses, lighting, costumes, and make up, are all original, creative choices made by a photographer that are protectible copyright expression.  As such, similarities as to these elements constitute protected expression that should have been considered and credited under the extrinsic test.  Moreover, the District Court overlooked the protectible selection and arrangement of the various elements of Plaintiffs' eleven separate photos.  Indeed, the District Court failed to credit that a series of Defendants' photos shared numerous similarities with a series of Plaintiff's photos. Simply put, such serial similarities across eleven different photos should have affected the similarity test in Plaintiffs favor.  Accordingly, the District Court erred as to similarity.

II.     The District Court also erred as to copying. The District Court required detailed allegations of direct access, when it's well-established that direct access is not the only way to plead the copying element of a copyright infringement claim. Indeed, it's well-established that a copyright plaintiff need not plead direct access to survive a motion to dismiss. Regardless, the District Court further erred in ignoring the complaint's allegations of direct-access. Beyond that, the District Court also erred by failing to draw reasonable inferences of copying. Indeed, given the factual allegations the far more likely inference is that Defendant copied rather than independently created a series of similar photos. The striking and probative similarities between the photos, the sheer number and volume of similar works (serial similarity), the unique, odd and surprising similarities between the works, the compressed timeline in which Defendant's purportedly created numerous, coincidentally similar works, and the way the Instagram platform operates, all support the inference that copying, not coincidence, explain these similarities. Indeed, it's downright implausible that Defendant independently-created a series of coincidentally-similar photos over the course of a few days. As courts have recognized that's a statistically implausible suggestion. Indeed, the probability of multiple independent creations in such a tight timeframe, is highly improbable.

**STANDARD OF REVIEW**

All issues on appeal are reviewed de novo with inferences taken in support of the complaint.  E.g., <u>Hanagami v. Epic Games, Inc.</u>, 85 F.4th 931, 938 (9th Cir. 2023) ("We review de novo a district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  When reviewing the complaint, we take all allegations of material fact as true and decide whether the complaint articulates enough facts to state a claim to relief that is plausible on its face."); <u>Starz Ent., LLC v. MGM Domestic TV Distrib., LLC</u>, 39 F.4th 1236, 1239 (9th Cir. 2022) ("de novo"); <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F.3d 988, 1003 (9th Cir. 2018) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.").

# ARGUMENT

## I. THE DISTRICT COURT ERRED ON SIMILARITY BECAUSE MR. WOODLAND'S UNIQUE PHOTOGRAPHY, POSES, COSTUMES, MAKE UP, AND LIGHTING ARE ALL PROTECTIBLE EXPRESSION UNDER LONGSTANDING PRINCIPLES OF COPYRIGHT LAW.

### A. The District Court overlooked key copyright principles regarding protectible expression in photography and artistic poses.

The Order below contravened three key principles when conducting its similarity analysis, with the second being the most significant, see ER-11-13; ER-53-56 (addressing similarity):

1. A side-by-side comparison of the infringed-upon work and the infringing-work is an appropriate way to demonstrate similarities, but the District Court improperly faulted Plaintiff's side-by-side comparisons.

2. Poses, lighting, costumes and makeup are all protectible expression and protectible elements of a photograph, but the District Court improperly treated such similarities as "unprotectable" as a matter of law.

3. Differences between the works don't detract from actionable similarities, but the District Court focused on differences as a basis to ignore a host of similarities.

Each error will be discussed in turn, with a particular focus on the second.

16

*First*, a side-by-side comparison of visual works is a legitimate way to demonstrate similarities between the infringed-upon photographs and the infringing photographs.

The District Court faulted Plaintiff for relying on side-by-side comparisons in his complaint as the basis for demonstrating actionable similarity. See, e.g., ER-12 ("Plaintiff does not point to any protectable expression in his photograph[.]"). That criticism was misplaced.

Doctrinally, a side-by-side comparison is the crux of similarity analysis. E.g., Experian Info. Sols., Inc. v. Nationwide Mktg. Servs., 893 F.3d 1176, 1186-1187 (9th Cir. 2018) ("the two works **must be compared side-by-side**."); General Universal Systems, Inc. v. Lee, 379 F.3d 131, 142 (5th Cir. 2004) ("A side-by-side comparison must be made[.]"). After all, "without such a comparison, it could not be determined whether the two works were substantially similar." Experian, 893 F.3d at 1187.

That's why courts have made clear that the works can speak for themselves. Indeed, for visual works, this Court has explained that a "plaintiff need not set forth detailed factual allegations about the elements of choreography to survive a motion to dismiss." Hanagami v. Epic Games, Inc., 85 F.4th 931, 945 (9th Cir. 2023) (citing Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 951 (9th Cir. 2019)).

17

For visual works, providing "side-by-side pictures" is the best evidence, *i.e.*, the best way to demonstrate similarities.  See Malibu Textiles, 922 F.3d at 953 (9th Cir. 2019) ("[M]ost importantly, they provide side-by-side pictures that make the similarities apparent.")

Based on such precedent, courts have rejected the flawed position adopted below that that similarities must be made verbally, as opposed to visually.  See, e.g., Klauber Bros., Inc. v. Roma Costumes, Inc., 2023 U.S. Dist. LEXIS 100345, *7-8 (C.D. Cal. June 7, 2023) ("Election to Present Side-By-Side Photographs Rather Than a Verbal Description of Substantial Similarity is Not Grounds to Dismiss Its Complaint.").  Pragmatically, this makes sense.  Indeed, such side-by-side comparison is not only a legitimate way to demonstrate similarities, but should be encouraged.

After all, when it comes to similarity the works themselves, not attorney argument, are the ultimate source of truth.  See Composite Effects, LLC v. All Elite Wrestling, LLC, 2023 U.S. Dist. LEXIS 85542, *5 (E.D. La. May 16, 2023) ("The touchstone of the substantial similarity analysis is a "side-by-side comparison[.]").  And, evaluating similarity by looking at the works at the pleading stage is easier for plaintiffs, defendants, and courts alike. Indeed, the present case is a prime example.  ER-21:21-25 (Defense counsel noting how Plaintiff's inclusion of the works streamlined similarity analysis).

For visual works, "side-by-side pictures [...] make the similarities apparent." Malibu Textiles, 922 F.3d at 953 (9th Cir. 2019). There's real wisdom to the time-honored adage that a picture is worth a thousand words.

Here, Plaintiff's reliance on side-by-side comparisons of the series of photographs was a legitimate and sufficient way to proceed to court. Plaintiff's complaint introduced a series of 11 copyrighted photos and 11 infringing photos. ER-130a-132k. The complaint explained that Defendant's photos "incorporated many protected elements of those photos." ER-129¶11. And, he specifically identified which of Defendant's 11 infringing photos infringed each of Plaintiffs' photos. ER-130a-132k. The Complaint then provided a "visual comparison of Plaintiff's original works and HILL's infringing derivative works, in order as listed above, is attached hereto as Exhibit A." ER-132. Such "allegations including the photograph[s] meet the pleading requirement[.]" See Klauber Bros, 2023 U.S. Dist. LEXIS 100345, *7.

Plaintiff's inclusion of side-by-side photos in his complaint was a proper and legitimate way to proceed to court and plead similarity.

**_Second_**, original photographs, poses, lighting, costumes, and makeup are all protectible copyright expression. Indeed, an avalanche of authority, stretching back over a century, confirms that such expression constitutes protectible elements of a photograph. Here, there are at least five different elements of protectible expression at the heart of this dispute:

- Poses

- Lighting

- Costumes

- Makeup

- Selection and arrangement of the aforementioned elements.[6]

Yet the District Court improperly ignored such protectible expression when conducting the substantial similarity test. It erred.

It improperly discounted numerous protectible elements of Plaintiffs' photographs, when conducting that test. ER-11-13. And, the District Court deemed protectible elements of Plaintiff's photographs as "unprotectable" as a matter of law. E.g., ER-12 ("Plaintiff does not have a protectable interest in the use of [...] specific poses[.]"). Indeed, treating poses, lighting, costumes, makeup and the selection and arrangement thereof, contravened an established body of copyright jurisprudence dating back to the seminal case of Burrow-Giles.

---

[6] This element is especially important given the serial copying at issue here.

20

In <u>Burrow-Giles</u>, the Supreme Court identified a host of creative choices that constituted protectible expression and protectible elements in a photograph, <u>Burrow-Giles Lithographic Co. v. Sarony</u>, 111 U.S. 53, 60 (1884).

In <u>Burrow-Giles</u>, the Supreme Court explained that an original pose was a protectible element of a photograph. <u>See</u> 111 U.S. 53, 60 (1884) (describing a photographer's "own original mental conception, to which he gave visible form by ***posing*** the said Oscar Wild in front of the camera [...] ***arranging the subject*** so as to present graceful outlines[.]").  In 1991, the Supreme Court has unanimously reaffirmed <u>Burrow-Giles</u> in <u>Feist</u>.  499 U.S. 340, 347 (1991) ("The originality requirement articulated in [...] <u>Burrow-Giles</u> remains the touchstone of copyright protection today."); <u>see also</u> <u>L.A. News Serv. v. Tullo</u>, 973 F.2d 791, 795 (9th Cir. 1992) (noting that <u>Feist</u> "explicitly reaffirmed <u>Burrow-Giles</u>[.]").[7]

---

[7] The District Court's attempt to distinguish Ets-Hokin from this case relies on a distinction without a difference. ER-13.  It is true that there are two separate doctrinal questions: (1) whether a photograph as a whole is copyrightable and (2) whether a particular element is protected by copyright. However, both questions are answered by resort to the <u>Burrow-Giles/Feist</u> standard for originality.  <u>See</u> <u>Feist</u>, 499 U.S. at 347 (1991) ("The originality requirement articulated in [...] *Burrow-Giles* remains the touchstone of copyright protection today.").  Thus, the operative question for both questions is whether the expression at issue is original and creative.

The Courts of Appeals, including this Court, have "continue[d] to hold that such decisions by the photographer—or, more precisely, the elements of photographs that *result* from these decisions—are worthy of copyright protection." See Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1074-1075 (9th Cir. 2000); see also Rogers v. Koons, 960 F.2d 301, 307 (2d Cir. 1992) (discussing the "'[e]elements of originality in a photograph"). Pursuant to that standard, original artistic choices regarding pose, lighting, costumes, makeup and the selection, arrangement and coordination are protectible elements.

Indeed, in the century since Burrow-Giles, this Court has also repeatedly articulated that original poses are a protectable element of photography. See e.g., United States v. Hamilton, 583 F.2d 448, 452 (9th Cir. 1978) ("Beginning with the Supreme Court's decision in Burrow-Giles Lithographic Co. v. Sarony, the courts have carefully delineated selection of subject, **posture,** background, lighting, and perhaps even perspective alone **as protectible elements of a photographer's work**."); Ets-Hokin, 225 F.3d at 1075 (9th Cir. 2000) ("**intellectual invention included: the posing** and arrangement of [the subject] so as to present graceful outlines"). Indeed, this Court has stressed that "courts have recognized repeatedly" that the selection of original "posture" is amongst the "protectible elements of a photographer's work." See Tullo, 973 F.2d at 794 (9th Cir. 1992).

22

Simply put, original decisions about how to pose a subject are amongst the "creative decisions involved in producing a photograph [that] may render it sufficiently original" to satisfy the Burrow-Giles/Feist originality standard for copyright protection. Id.[8]

This Court is not alone. Since Borrow-Giles, court after court has recognized that original poses are protected by copyright law. E.g., Rogers, 960 F.2d at 307 (2d Cir.) ("elements of originality in a photograph may include posing the subjects[.]"); SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp. 2d 301, 308-309 (S.D.N.Y. 2000) ("these creative choices included the **particular pose**"); Meshwerks, Inc. v. Toyota Motor Sales U.S.A., 528 F.3d 1258, 1264 (10th Cir. 2008) (Gorsuch, J.) ("the photographer's decisions regarding pose, positioning […], and the like, those elements can be said to 'owe their origins' to the photographer[.]"); cf. Gross v. Seligman, 212 F. 930, 931 (2d Cir. 1914) ("many close identities of pose[.]"); Whyte Monkee Prods.,

---

[8] Rentmeester is not to the contrary. At core, Rentmeester turned on a lack of similarity, not a lack of protectibility. See Rentmeester, 883 F.3d at 1121 ("Nike's photographer did not copy the details of the pose as express in Rentmeester's photo […] The position of each of his limbs in the two photos is different[.]"). Also, Rentmeester was concerned with that case's "unique facts"—especially a wise concern about permitting a photographer to monopolize Michael Jordan's image. Id. at 1121; see also id. at 1119 ("He is entitled to protection only for the way the pose is expressed in his photograph[.]").

LLC v. Netflix, Inc., 601 F. Supp. 3d 1117, 1135 (W.D. Okla. April 27, 2022) ("**photographer's decisions regarding pose**[.]"); Gillespie v. AST Sportswear, Inc., 2001 U.S. Dist. LEXIS 1997, *22-23 (S.D.N.Y. Feb. 22, 2001) ("**pose the models** [...]would constitute 'expression' of an idea, as distinguished from the idea itself."); Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003) ("**An artist may vary the pose […] such variations, if original, may earn copyright protection**.").

In short, original poses are a readily protectable element of a photograph under the long-standing Burrow-Giles/Feist standard of copyright protection.

Moreover, beyond protection as an element of photography, expressive gestures and body poses could also receive protection in and of themselves pursuant to 17 U.S.C. §102(a)(4) ("pantomimes and choreographic works"); 1 NIMMER ON COPYRIGHT § 2.07 (2024) ("The current Copyright Act for the first time accords full protection to pantomimes and choreographic works."). Broadly defined, "pantomime" is said to consist of "significant gesture without speech." 1 NIMMER ON COPYRIGHT § 2.07[A] (2024). And, this Court has recognized "body position, body shape, body actions" as amongst the "expressive element[s]" protected under §102(a)(4)'s protections. See Hanagami, 85 F.4th at 943 (9th Cir. 2023).

Thus, original poses, gestures and body positioning could independently be protected pursuant to §102(a)(4). Cf. Horgan v. Macmillan, Inc., 789 F.2d 157, 163 (2d Cir. 1986) ("the district judge took a far too limited view of the extent to which choreographic material may be conveyed in the medium of still photography.").

Original lighting choices also present another protectible element of a photograph. E.g., Ets-Hokin, 225 F.3d at 1074-1075 (9th Cir.); Rogers, 960 F.2d at 307 (2d Cir. 1992). Burrow-Giles also made clear that "lighting" decisions by a photographer are amongst the protectable elements of a photograph. Burrow-Giles, 111 U.S. at 60 ("arranging and disposing the light and shade"). And, since that time, courts have consistently recognized that a photographer's lighting decisions as a projectable element of photograph. E.g., Ets-Hokin, 225 F.3d 1068, 1074-1075 (9th Cir. 2000) ("the arrangement and disposition of **light** and shade"); United States v. Hamilton, 583 F.2d 448, 452 (9th Cir. 1978) ("Beginning with the Supreme Court's decision in Burrow-Giles, the courts have carefully delineated selection of subject, posture**,** background, **lighting**, and perhaps even perspective alone **as protectible elements of a photographer's work**."); Rogers, 960 F.2d at 307 (2d Cir.) ("**lighting**,").

25

Indeed, this Court has stressed, that over a hundred years after <u>Burrow-Giles</u>, "[c]ourts today continue to hold that such decisions by the photographer—or, more precisely, the elements of photographs that *result* from these decisions—are worthy of copyright protection." <u>Ets-Hokin</u>, 225 F.3d at 1074-1075 (9th Cir.). That's because such decisions as to lighting are among the "intellectual invention included" in a photograph by a photographer. <u>Id.</u> When taking a photograph, a photographer must make creative decisions that include, *inter alia*, decisions as to "back lighting", what perspective the subject is "illuminated from" and what subjects or aspects of the subject to leave "slightly shadowed." <u>Id.</u> at 1071-1072. From these options spring a nearly "infinite number" of creative choices as to lighting. <u>Id.</u> at 1074; <u>Burrow-Giles</u>, 111 U.S. at 60 ("arranging and disposing the light and shade, suggesting and evoking the desired expression")

Simply put, for well over a century, it's been well-established that such lighting "elements of photographs that result from decisions are worthy of copyright protection." <u>See Ets-Hokin</u>, 225 F.3d at 1074-1075 (9th Cir. 2000).

Original costumes and costuming decisions are also protectable expressions that constitute another protectible element of a photograph, as Burrow-Giles also clarified. 111 U.S. 53, 55 ("selecting and arranging the costume"); see, e.g., Tullo, 973 F.2d 791, 793 (9th Cir. 1992) ("costume."); see also Silvertop Assocs. v. Kangaroo Mfg., 931 F.3d 215, 217-218 (3d Cir. 2019) (recognizing copyright protection in a banana costume); Chosun Int'l v. Chrisha Creations, Ltd., 413 F.3d 324, 329 (2d. Cir. 2005) (address copyrightable elements of a plush sculpted animal costume); AFG Media Ltd.. v. Poptrend-Official, 2023 U.S. Dist. LEXIS 230686, *1-2 (W.D. Pa. Dec. 29, 2023) (copyright protection in an inflatable alien costume); cf. Conrad v. AM Cmty. Credit Union, 750 F.3d 634, 636 (7th Cir. 2014) ("Conrad has copyrights […] in her banana costume.").

Where costumes and costuming decisions are original, they warrant copyright protection both as a protectable element of a photograph and as protectable expression in and of itself.

Original makeup and makeup design presents yet another protectible feature. See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 33 (2d. Cir. 2021) ("Goldsmith also applied additional makeup to Prince […] to accentuate his sensuality."). Such "creative decisions involved in producing a photograph", where original, would also satisfy the Burrow-Giles/Feist originality.

27

That's why courts have repeatedly recognized that makeup artistry are protectible elements. <u>See</u>, <u>e.g.</u>, <u>Mountain v. Mehron, Inc.</u>, 2018 U.S. Dist. LEXIS 226318, *39 (C.D. Cal. Aug. 15, 2018) ("**makeup** designs are copyrightable"); <u>Carell v. Shubert Org., Inc.</u>, 104 F. Supp. 2d 236, 272 (S.D.N.Y. 2000) (finding plaintiff stated "copyright claims in certain makeup designs"); <u>Mourabit v. Klein</u>, 816 F. App'x 574, 578 (2d. Cir. 2020) ("Mourabit's Makeup Artistry falls comfortably within "the broad ambit of the subject matter categories listed in section 102(a).").

The Copyright Office grants copyright registration in makeup designs. <u>See</u> <u>Mountain</u>, 2018 U.S. Dist. LEXIS 226318, *4; <u>Carell</u>, 104 F. Supp. 2d at 250-251 (valid certificate). Such protection corresponds with our everyday experiences. Makeup *artists* are artists. Indeed, the Oscars presents an annual award for best makeup in a film. After all, painting is clearly protectible—and makeup is painting on skin, rather than canvas. <u>See</u> <u>Star Athletica, L.L.C. v. Varsity Brands, Inc.</u>, 580 U.S. 405, 425 (2017) (J., Ginsburg, concurring). Just as the chevron designs printed on cheerleader outfits were, separable and protectable, in <u>Star Athletica</u>, make up designs painted on a subjects face or body would also be protectable.

28

Finally, the "[o]riginal **selection**, **coordination**, and arrangement" of such elements would be a protectable expression. See Hanagami, 85 F.4th at 943 (9th Cir. 2023). Thus, even if one were tempted to consider any one of these elements, standing alone as uncopyrightable, the combination of such creative decisions together warrants copyright protection and readily satisfies the Burrow-Giles/Feist standard. See also, L.A. Printex Indus. v. Aeropostale, Inc., 676 F.3d 841, 849 (9th Cir. 2012) (citing Feist, 499 U.S. at 362) ("Original selection, coordination, and arrangement of unprotectible elements may be protectible expression.").

That's critical here because, beyond the elements of the individual photographs, Defendant also copied the selection, coordination, and arrangement, in the eleven photos as a collection.

\* \* \* \* \*

Below, the District Court contravened over a century of copyright jurisprudence by ignoring this plethora of protected elements of a photograph, stemming back to Burrow-Giles. It contravened case law recognizing copyright protection for the original expression in poses and body position. E.g., ER-12 ("Plaintiff does not have a protectable interest in [...] specific poses[.]"). It overlooked the unique and original lighting motifs here used to obscure the genitalia of under models—a lighting motif that emerges when examining all the series of photos together.

29

The District Court also failed to recognize protection in the costume and makeup choices embodied in Plaintiff's photos. By failing to recognize the protectability of such elements when conducting the extrinsic step of the substantial similarity test, the District Court erred.

And, these errors have bite. Although it may sound innocuous to call something uncopyrightable, in truth a court profoundly distorts and frustrates copyright law's incentive function when deeming something unprotectible. From its inception, copyright law was designed to be "the engine of free expression" by "establishing a marketable right to the use of one's expression[.]" See Eldred v. Ashcroft, 537 U.S. 186, 219 (2003). Indeed, copyright protection of the elements of a photograph incentivize either the creation of new work or the procurement of licenses to make use of another's protectible elements. See Andy Warhol, 143 S. Ct. at 1278 ("Such licenses, for photographs or derivatives of them [...] provide an economic incentive to create original works, which is the goal of **copyright**."). By contrast, fiating no "protectable interest" in such features and elements of a photograph undermines those incentives and copyright's ability to create licensing markets. That's why, for over a century tracing back to Burrow-Giles, the Supreme Court and others Courts have continued to recognize elements such as original poses, lighting, costume, makeup, and the selection, arrangement, and combination thereof as amongst the protectible elements of a photograph.

30

Indeed, affording such copyright "protection reflects a longstanding view of Anglo-American law" dating back well over a century.  See Ets-Hokin, 225 F.3d at 1074 (9th Cir. 2000) (discussing the Fine Arts Copyright Act 1862 § 1); Burrow-Giles, 111 U.S. at 60 (1884).

***Third***, it's well-established that differences do not detract from the similarities between works.  Although differences may speak to damages; once there are articulable similarities, then differences—even numerous differences–won't preclude a finding of substantial similarity.

Despite this bedrock principle, the District Court stressed differences while ignoring similarities.  See ER-12 ("the photographs depict different people, against different backgrounds, with different lighting techniques.").  That was an error.

It's axiomatic that when it comes to copyright infringement a Defendant may not "excuse the wrong by showing how much of his work he did not pirate." Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936) (Hand, J.).  Indeed, this Court has explained that "[i]t is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown."  L.A. Printex, 676 F.3d at 851 (9th Cir. 2012).

As its name suggests, a similarity test turns on the presence of similarities. See, e.g., Hanagami, 85 F.4th at 941 (9th Cir. 2023) ("**objective similarities**"); Rentmeester, 883 F.3d. at 1118 ("**objective similarities**[.]"); Folkens v. Wyland Worldwide, LLC, 882 F.3d 768, 774 (9th Cir. 2018) ("*focusing on articulable similarities between the two works*."). Accordingly, when it comes to analyzing substantial similarity "the key is the similarities rather than the differences." Attia v. Society of the N.Y. Hosp., 201 F.3d 50, 57-58 (2d Cir. 1999); Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1093 n.4 (2d. Cir. 1977) ("The key [...] is therefore the *similarities rather than the differences*.").

And, once there are "articulable objective similarities between the two works" then the copyright claim survives this Court's extrinsic test and must proceed to the "jury to make a nuanced subjective determination under the intrinsic test." See Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 986-987 (9th Cir. 2017). Dismissing a copyright claim in the face of "similarities between the two works" would be "inappropriate[.]" Id.

That's why a Defendant cannot simply "point to differences"—because such differences do "little to erode the *similarity*" between works. Shaw v. Lindheim, 919 F.2d 1353, 1362 (9th Cir. 1990) (citing Sheldon, 81 F.2d 49 (2d Cir.)). Indeed, this Court's been clear: even "numerous differences" will not preclude a finding of similarity. See Landsberg v. Scrabble Crossword Game Players, Inc.,

736 F.2d 485, 488 (9th Cir. 1984) ("although defendants pointed to numerous differences between their puppets and plaintiff's, they were still held to be substantially similar."). Thus, the first step in conducting a similarity analysis is to look for similarities. And, if there are similarities, then differences–even numerous differences–don't foreclose liability. Indeed, it's well-settled that once similarities are identified, then differences become "entirely immaterial[.]" See L.A. Printex, 676 F.3d at 851 (9th Cir. 2012).

And court after court has adhered to this time-honored principle that differences don't detract from similarity. For example, in the Supreme Court's Harper case, copying a mere 300 words out of a 200,000-word manuscript stated a claim. See Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 579 (1985) (Brennan, J., dissenting) ("The Court holds that The Nation's quotation of 300 words from the unpublished 200,000-word manuscript of President Gerald R. Ford infringed the copyright in that manuscript[.]"). In Harper, even hundreds of thousands of words of differences didn't shut the door on liability, given the 300 words of similarity. So too with fifteen sentences copied into a 53-page work. See Palmer v. Braun, 287 F.3d 1325, 1334 (11th Cir. 2002). In Palmer, the Eleventh Circuit explained that pages and pages of differences didn't foreclose liability.

33

Pragmatically, this long-standing feature of copyright law makes sense. Just as a pickpocket can't grab a $100 bill out of someone's pocket and excuse that wrong by pointing to the $50 bill they didn't take; a copyright infringer can't "excuse the wrong by showing how much of his work he did not pirate." Sheldon, 81 F.2d at 56 (2d. Cir. 1936) (Hand, J.). Any other rule would create a massive loophole in copyright law. Absent this principle, an infringer could steal whole scenes from a movie and then just add a bunch of differences around the stolen scenes. Or , an infringer could copy entire chapters of a book and just add new material.

Nevertheless, the District Court erred by deviating from this longstanding principle. It focused on "different backgrounds" and that the "photographs depict different people." ER-12. That was error. Indeed, courts have rejected precisely such arguments in the photography context. See Gross, 212 F. at 931-932 ("backgrounds are not identical, the model in one case is sedate, in the other smiling"). Copyright's similarity element can be satisfied even where one would "no doubt, find differences between [...] two photographs." Id. After all, "[t]he whole picture need not be copied to constitute infringement. Cavalier v. Random House, Inc., 297 F.3d 815, 825 (9th Cir. 2002). Here, given the numerous similarities between the Plaintiff's and Defendant's works, harem, any differences were "entirely immaterial." See L.A. Printex, 676 F.3d at 851 (9th Cir. 2012).

34

**B.    Under these longstanding copyright principles, the copied expression is actionable and shouldn't have been dismissed.**

Applying the above principles here, see Section I.A, *supra*, it's clear that the opposite outcome should have obtained below and that reversal by this Court is warranted.

To begin, consider a prominent artist and self-photographer, Cindy Sherman. See "Cindy Sherman," Wikipedia (last access May 28, 2024) ("Cynthia Morris Sherman (born January 19, 1954)[2] is an American artist whose work consists primarily of photographic self-portraits, depicting herself in many different contexts and as various imagined characters."). Consider a few of her copyrighted works:

 

Kelly Sidley, "The Heroines of Cindy Sherman's Photographs," Sotheby's (Sept. 18, 2019).

35



"[Cindy Sherman: Appropriation and the Archive](#)," The Guggenheim (last accessed May 28, 2024).

Furthermore, suppose that Cindy Sherman's works are infringed. Applying the aforementioned three copyright-infringement principles overlooked by the District Court, <u>see</u> Section I.A, *supra*, three things are clear:

1. Cindy Sherman could maintain an action by proffering her photographs. She would not need to verbally regurgitate what she has visually demonstrated by attaching her infringed works to the complaint.

2. Cindy Sherman's photography would have many protectible elements: (1) her self-photography, (2) her poses; (3) her lighting; (4) her costumes; and (5) her makeup would all be protectible elements, such that if they showed up in other photographs, they would be infringing.

3. If the infringer had simply replaced Cindy Sherman's self-photography with their own self-photography, that different of subject matter wouldn't undermine the similarities—in the appropriated protectible and expressive elements of photography, poses, lighting, costumes, and makeup. Those would still be infringing.

* * * * *

Soo too here.

*First*, Plaintiff attached his relevant works to his complaint. ER-144-153. This proffering of the infringed works and the infringing works is sufficient for a side-by-side comparison.

*Second*, an analytical examination of Mr. Woodland's works shows an abundance of protectible expression. Among them, there's all the aspects of the photography, the posting, the costumes (both in what's chosen to be worn and what's not); the makeup; the lighting (both in placement of light source and image).

37

The key question to ask yourself is the following one: **<u>Is there any creativity appearing in the photographs shown below</u>**?



ER-144.

 lifemodelrw 



  

 Liked by **rtist_sgc** and **18 others**

**lifemodelrw** "Unknown Soulja", 2021... more

February 6, 2021

ER-147.



ER-146.



ER-148.



ER-153.



ER-153.

 lifemodelrw



Liked by **lifemodelpaul** and **7 others**

**lifemodelrw** "Tiedye", 2019... more

November 25, 2019

ER-151.

lifemodelrw                                    ⋮



♡  ◯

 Liked by **artmodelfahad** and **28 others**

lifemodelrw "Fallen", 2020
#figurativeart #figuremodel #figuredrawing #lifemodel... more

June 25, 2020

ER-150.

 lifemodelrw



   

 Liked by **yecafb** and **38 others**

lifemodelrw "Polkadot Pose", 2020... more

caeste8 

August 14, 2020

ER-152.

**Another critical point is that the entire selection of these poses as shown in these photographs, *etc.*, amount to additional creative selection that is itself a protectible element when they're copied in toto**. Someone who copied this selection of poses—who serially infringes not just one photograph but a whole collection of them posted by Plaintiff on Instagram—is going far further and copying more expression that someone who copied just one.

And, the final question of the unlawful-appropriation or actionable-similarity analysis is: **Do any of these elements appear in the following infringing photos, either individually or seen as a collection**?



ER-144.

47



ER-145.

 lilnasx ✓



Liked by **viktor_efa** and **698,722 others**

**lilnasx** ME & @CASHAPP ARE GIVING AWAY $500K IN BITCOIN. COMMENT YOUR TOP 3 SONGS ON MONT… more

View all 34,202 comments

**ryantedder** "THAT'S WHAT I WANT"

**bbnomula** aoty

September 17

ER-146.

49



ER-147.

50



ER-149.

51



ER-151.



ER-152.

53



ER-153.    Here, both Plaintiff's individual photographs and his collection of photographs are protectible.  His individual poses and his collection of poses are protectible.    His individual costume elements and collection of them are protectible, *etc.*    Critically, both the expressions made in the individual photographs and the collection of them combined across the eleven works are protectible.

**C. The District Court's cited authorities do not support its dismissal and some support reversal as to similarity.**

As discussed above, the District Court made three key legal errors, <u>see</u> Section I.A, *supra*, that led it to misapply this Court's similarity analysis as to these copyrighted works, <u>see</u> Section I.B, *supra*. The judgment below should be reversed because Mr. Woodland has proffered both his own works and Mr. Hill's, showing that they share identical or substantially-similar aspects of protectible expression.

The District Court's cited authorities on similarity, <u>cf.</u> ER-11-13; ER53-56, don't suggest otherwise and, in many respects, demonstrate that reversal is warranted:

- <u>Skidmore v. Led Zeppelin</u> affirmed a "jury's verdict" in a music-copyright case where the plaintiff's "own [expert] musicologist" conceded that the plaintiff's suit was predicated upon commonplace "building blocks" of music. 952 F.3d 1051, 1056, 1069-1070 (9th Cir. 2020) (en banc). Mr. Woodland's infringement case is *<u>not</u>* predicated upon commonplace artistic building blocks. Photography of a nude man in *<u>these</u>* specific poses, shot at *<u>these</u>* specific angles, wearing *<u>these</u>* specific costumes, with *<u>this</u>* specific makeup, illuminated by *<u>this</u>* specific lighting, *etc.*, isn't commonplace.

55

- Rentmeester v. Nike, Inc., involved _one_ photo—not eleven. It limited itself in two critical respects. First, Rentmeester is limited to "photographs of recognizable subject matter"—_i.e._, a recognizable person like Michael Jordan. 883 F.3d 1111, 1120 n.2 (9th Cir. 2018) ("We deal here with photographs of recognizable subject matter, rather than more abstract photographic works. We need not decide […] that latter category of works."). Second, Rentmeester is further limited to its "unique facts"— noting there's "no hard-and-fast rule" because similarities "necessarily turn on the unique facts of each case." Id. at 1121. The unique facts here—over _**ten**_ copied photos, identical or near-identical photography, posing, costume, makeup, _etc._—don't turn on the subject-matter of who's depicted. By contrast, in Rentmeester, once Michael Jordan was filtered out, there were no similarities in expression. Id. at 1121-1123.

- Three Boys Music Corp. v. Bolton involved a sufficiency-of-the-evidence challenge to a jury verdict in a music-copyright case with dueling experts. 212 F.3d 477, 480, 485-486. (9th Cir. 2000). Bolton doesn't address pleading standards. To the extent Bolton is relevant, it supports reversal because Bolton emphasized the failure of defendants to make any showing of "prior art"—a failing of Defendant here too (insofar as Defendant couldn't muster up any prior art via judicial notice). Id.

56

- <u>Cavalier v. Random House, Inc.</u>, correctly states the Ninth Circuit's test of infringement and supports reversal insofar as it emphasizes that the "whole picture need not be copied to constitute infringement" but rather "mere copying of a major sequence is sufficient." 297 F.3d 815, 825 (9th Cir. 2002). Here, Mr. Hill appropriated protectible aspects of Mr. Woodland's works.

- <u>Folkens v. Wyland Worldwide, LLC</u>, held that dolphin poses—"natural positioning and physiology" of the seafaring mammals—were an "idea first expressed in nature[.]" 882 F.3d 768, 775 (9th Cir. 2018); <u>Satava v. Lowry</u>, 323 F.3d 805, 812 (9th Cir. 2003) ("Nature gives us ideas of animals in their natural surroundings[.]"). Of course, this case doesn't involve animal poses, as distinguished from *human* ones. Mr. Woodland is not an animal. And, *human* expressions aren't products of nature in the sense in which <u>Folkens</u> and <u>Satava</u> speak. Those cases are inapposite.

* * * * *

Ultimately, none of the District Court's cited authorities are on point here. None of them dislodge over a century of jurisprudence from <u>Burrows-Giles</u> onward regarding the protectible types of expression at issue here. None dislodge the similarities apparent from an examination of the works.

57

## II. THE DISTRICT COURT ERRED ON COPYING BECAUSE MR. HILL'S USE OF IDENTICAL AND RARE EXPRESSION, A DOZEN TIMES, IN A SHORT TIMEFRAME IS SUFFICIENT TO INFER THAT THESE SIMILARITIES ARE NOT JUST COINCIDENCE.

### A. The District Court overlooked key copyright principles regarding how to distinguish likely copying from coincidence.

Below, the District Court held that Plaintiff had failed to plausibly plead the second element of an infringement claim–i.e., that Defendant had access to Plaintiff's Photos. See ER-10-11. In so doing, the District Court committed three key errors regarding the copying element of an infringement claim:

1. The District Court demanded too much, requiring direct access when direct access is not required. Regardless, the District Court also overlooked that the complaint did, in fact, plead direct access.

2. The District Court treated access in isolation, ignoring the nexus between access and similarities, and failed to draw inferences of access from the striking and probative similarities between the infringed-upon and infringing works.

3. The District Court mischaracterized Plaintiff's theory of access–mischaracterizing Plaintiff as arguing access from the works' merely being online.

Each error is discussed, in turn.

58

***First***, the District Court demanded allegations of direct access; but direct access is not required to demonstrate copying.

That was error.

Indeed, the copying element does **<u>not</u>** demand "that defendant *actually* viewed the copyrighted work[,]" rather it's enough to "show that defendant had a reasonable *opportunity* to view" the protected work, <u>see</u> 4 NIMMER ON COPYRIGHT § 13D.05 (2024). It's well-established that a "copyright infringement plaintiff need not prove that the infringer *actually saw* the work in question[.]" <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 55 (2d Cir. 2003); <u>Bouchat v. Baltimore Ravens, Inc.</u>, 241 F.3d 350, 354 (4th Cir. 2000) (same).

After all, [d]irect evidence of copying is only rarely available." <u>Design Basics, LLC v. Lexington Homes, Inc.</u>, 858 F.3d 1093, 1099 (7th Cir. 2017). Accordingly, there are a number of ways that Plaintiff can prove access. Indeed, access can be inferred from, *inter alia*, similarities and the totality of the circumstances. That's because the copying element serves a pragmatic purpose: distinguishing between likely copying from mere coincidence.

Yet, the District Court erroneously demanded direct access below. It demanded detailed factual allegations explaining the particular "chain of events linking the plaintiff's work and the defendant's access" in order to plead copying. ER-10. In other words, the District Court demanded a detailed account of

precisely who and precisely how Defendant's had accessed Plaintiff's works. That demand amounted to an improper requirement of direct access. See 4 NIMMER ON COPYRIGHT § 13D.05 n. 6(2024) (cautioning that "some courts have adopted that erroneous position requiring actual viewing."). But direct access is not required, and for good reason. After all, evidence of direct access is rarely available to a copyright plaintiff—especially pre-discovery.

Nevertheless, the District Court overlooked that the complain *did* provide allegations of direct access. Plaintiff's complaint *does* provide such factual allegations of direct. The complaint *does* allege how Defendant in fact viewed plaintiff's works. So, respectfully, the District Court simply failed to realize that plaintiff had alleged direct access sufficient to satisfy the second element of a copyright claim.

The complaint alleged that Plaintiff had published his copyrighted photographs "on his Instagram account." ER-128¶9; ER-129¶13 ("the social media platform Instagram, where he published all of the subject works[.]"). It further alleged that Defendants "viewed Plaintiff's works" and that "Defendant copied Plaintiff's works when he created the infringing works[.]" ER-129¶12. And, it further alleges that Defendant "Hill *himself* frequents" the Instagram Platform. ER-130¶13. And, the complaint further alleges that Defendant subsequently

posted his infringing works to the same Instagram platform. ER-130¶14a-ER-131¶14k.

Thus, the complaint *does* sufficiently allege the who, what and how, and where of the copying. Accordingly, the complaint sufficiently alleged the copying element. Indeed, courts have been satisfied with far less.

Direct access is demonstrated where a Defendant "actually viewed" the work. See Briggs v. Blomkamp, 70 F. Supp. 3d 1155, 1165 (N.D. Cal. 2014) ("Direct access is shown if there is proof that the defendant **actually viewed** […] the work at issue."). Here, that's precisely what the complaint plead—direct access. Defendants "*viewed* Plaintiff's works[.]" ER-129 ¶12.

Such an allegation of direct viewing should've been sufficient. See Seven Oaks Millwork v. Us, 483 F. Supp. 3d 1192, 1196 (M.D. Fla. 2020) ("Plaintiff has alleged […] that direct copying took place. This results in Plaintiff not needing to plead access, which is an alternative means of satisfying the second element of a copyright infringement claim."). Indeed, at the pleading stage, these allegations of direct viewing and direct copyright must be "afforded the benefit of the presumption of truth[.]" Id.; see also Iqbal, 556 U.S. at 678.

In short, the District Court demanded too much as the pleading stage by demanding allegations of direct access–and then, simply overlooked that the complaint alleged just that. The complaint's allegation that Defendants "viewed

Plaintiff's works" at this procedural posture is sufficient to plead the second element of a copyright claim. ER-129¶12. This Court could, and should, reverse on that ground alone.

*__Second__*, the District Court improperly treated access in isolation, ignoring the nexus between access and similarities.

Accordingly, the district court failed to draw inferences of access, in favor of the non-movant, from the striking and probative similarities between the <u>eleven</u> (11) infringed-upon works and <u>eleven</u> (11) infringing works, sharing highly idiosyncratic similarities.

That was error. After all, the issue of "substantial similarity is inextricably linked to the issue of access[.]" <u>Skidmore</u>, 952 F.3d 1051, 1065-1066 (9th Cir. 2020). Given the District Court's errors on similarity—and given its failure to credit inferences from the striking and probative similarities between the series of works—this Court could vacate the access determination on that ground alone.

Critically, access cannot be meaningfully addressed without examining the substance and similarities of the works—and in this sense, access is the opposite of a threshold issue. <u>See</u> 4 NIMMER OF COPYRIGHT §13D.08[B][1] ("**On the Interrelationship of Factors**"—discussing how similarities probative of copying affect the required extent of a showing of access). Notably, a showing of

accessibility is enough if there are also similarities that are "probative of copying" (often called "probative similarities" as shorthand):

> Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had **[1]** *access* to the copyrighted material, and that there are **[2]** *similarities between the two works that are probative of copying*.

Jorgensen, 351 F.3d at 51 (2d Cir.).  In turn, these two subparts are interrelated, as a stronger showing of probative similarities reduces the needed showing on access. Indeed, there is an inverse relationship between access and probative similarity such that "**the stronger the proof of similarity, the less the proof of access is required.**" Id. at 56 (quoting NIMMER ON COPYRIGHT §13.03[D]).

Indeed, *even if* the District Court were correct that the similarities were not protectible–such shared similarities could still be probative of access.  See Batiste v. Lewis, 976 F.3d 493, 502 (5th Cir. 2020) ("A plaintiff can show **probative** similarity by pointing to any **similarities** between the two works, even as to unprotectable elements, that, in the normal course of events, would not be expected to arise independently."); Skidmore, 952 F.3d at 1064 ("such [probative] similarity may be based on the overlap of **unprotectable** as well as protectable elements.").

Notably, this Court recently clarified the relationship between "inextricably linked "concepts of similarity and access, when discarding the so-called inverse ratio rule.  See Skidmore, 952 F.3d at 1065-1066.  Skidmore explained that the

inverse-ratio was no longer good law. Under that rule, a plaintiff who could show broad distribution/a high degree of access could make lower showing of similarity. This Court rejected that rule and rejected the idea that the highest degrees of access somehow lowered the showing of similarity required. See id. at 1068.

Nevertheless, even after Skidmore, the issues of substantial similarity and the issue of access remain "inextricably linked[.]" See id. at 1065-1066. Skidmore merely clarified that that link only works one way. After Skidmore it is no longer true that the more accessibility somehow lowers the showing of similarity required (the so-called inverse ratio rule). But Skidmore did not displace the longstanding copyright principle by which access can be inferred from striking or probative similarities. Thus, the two issues remain "inextricably linked," it's just that it runs one way: the more similarity the less of a showing of access required (because it can be inferred from staking similarity).

Thus, after Skidmore, it remains the case that a plaintiff can demonstrate copying "by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." Hanagami, 85 F.4th 931, 941(9th Cir. 2023).

Thus, the two issues (similarity and access) remain "inextricably linked"-- but the link simply runs one way. And, the District Court erred in severing that link and failing to credit and draw inferences from the probative and striking

64

similarities between the 11 works. The failure to consider that interrelationship between similarities and access warrants vacatur of the District Court's access determination.

**Third**, the District Court mischaracterized Plaintiff's theory of access as resting solely on the works merely being online. ER-11 (citing, Design Basics, 858 F.3d at 1108).

But that's not Plaintiff's theory.

Plaintiff's theory was **not** that mere availability online can demonstrates access. See ER-11 ("the existence of the plaintiff's copyrighted materials on the Internet […] cannot **by itself** justify an inference that the defendant access those materials."); Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1106 ("**mere existence of the website** establishes a reasonable possibility that [Defendant] accessed its plans.").

Rather, Plaintiff's theory was that striking and probative similarities, coupled with serial similarities across eleven separate works, coupled with a host of other factual inferences, while *also* being on the same online Platform, which Defendant frequents can, taken together, create sufficient inferences of access at this posture. See Section II.B., *infra*; ER-129 ¶12("evidenced by the striking

65

similarities between Plaintiff's eleven (11) separate works and the infringing works").

The District Court's rejection of a "mere" online theory misrepresents Plaintiff's theory and improperly ignored similarities when examining access.

And, the District Court's focus on "likes" contravenes the animating concerns in Skidmore. See ER-11 ("75 is the maximum number of likes Plaintiff received[.]"). But see Skidmore at 1068 ("nothing in copyright law suggests that a work deserves stronger legal protection simply because it is more popular or owned by better-funded rights holders."). Indeed, Skidmore was concerned with an approach that "unfairly advantages those whose work is *most* accessible[.]" The District Court's approach, requiring ubiquitous access, or millions of likes, to even consider similarities when accessing access would create the same unfair advantages–unfair advantages that have no basis in copyright law. See Skidmore at 1068 ("nothing in copyright law suggest")

****

In short, the District Court's access analysis was plagued by three central errors.

First, it required proof of direct access; when direct access is not required. Moreover, it ignored and failed to take as true the complaint's allegations of direct access—*i.e.*, that Defendants *actually* viewed and copied Plaintiff's works.

Second, the District Court severed the nexus between the "inextricably linked" issues of similarity and access. By failing to consider probative similarities in its access analysis, the District Court failed to draw proper inferences in Plaintiff's favor, at this early procedural posture.

Finally, the District Court's rejection of a mere-existence-online theory of access mischaracterized Plaintiff's pleadings and theories of access below. Because the District Court failed to credit and take as true allegations of direct access; failed to consider numerous similarities across eleven different works when assessing access; and failed to draw inferences in Plaintiff's favor; and its access analysis was deeply flawed. For those reasons alone, this Court should reverse and or vacate the District Court's access analysis.

**B.    Under these principles, there are strong bases—similarities, volume, rarity, timing, availability—to infer copying.**

At core, the access element asks a pragmatic and commonsensical question: are the similarities between the two works ones that "in the normal course of events, would not be expected to arise independently[?]" See Batiste v. Lewis, 976 F.3d 493, 502 (5th Cir. 2020) ("A plaintiff can show **probative** similarity by pointing to any **similarities** between the two works, even as to unprotectable elements, that, in the normal course of events, would not be expected to arise independently.").

Accordingly, a copyright plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share **similarities probative** of copying." Skidmore, 952 F.3d at 1064 (9th Cir). Here, there's ample circumstantial evidence, including probative and striking similarity across **eleven** separate works, that "shows that the **similarities** between the two works are due to "copying rather than . . . coincidence[.]" Id. at 1064. The weight of this circumstantial evidence, taken together, readily supports an inference of factual copying here. Certainly, in light of the allegations, a reasonable juror could find that Defendants copied Plaintiffs work when producing serial similarities across eleven separate—rather than coincidentally creating such serial similarities.

### i) Probativeness and extent of similarities

Here, each of the odd similarities between Plaintiff's works and Defendants' work supports an inference of copying. See Section I.B, *supra* (describing some of the similarities). Each of these similarities, found in each photograph must be evaluated for indicia of probative similarity.

Indeed, for *each* similarity, a fact finder must ask: is that similarity the type of similarity that I would expect to arise from "coincidence." See Skidmore, 952 F.3d at 1064. The shared similarity of two photos featuring  a model, with metal chains wrapped around his neck, wearing odd, futuristic reflective sunglasses, for example. ER-245. Coincidence?  Or, the shared similarity of two photos depicting a naked model with a bright light glowing from the male model's genitals, thereby obscuring yet drawing attention to the naked models' groin areas.   ER-243. Coincidence?

For each of these similarities, across all the photos in dispute, we must ask could a fact-finder infer copying from such a similarity. Is such a similarity probative indicia of copying?  And, notably, that's true whether or not a particular similarity is protectable subject matter.  See Skidmore, 952 F.3d at 1064 ("such [probative] similarity may be based on the overlap of **unprotectable** as well as protectable elements.").

Here, each of the many instances of odd and unexpected similarities between Plaintiffs' and Defendants' works supports an inference of copying. See Section IB *supra*.

### ii) Volume of copying and number of works

Moreover, the sheer volume of similarities–serial similarities across eleven separate works–provides even further indicia of and inferential support for copying. Here, eleven of Defendant's works contain similarities to eleven of Plaintiff's works. Simply put, that's odd. It should raise the eyebrow of any reasonable fact finder or juror. It should make a fact-finder pause and ask, do I really think elven works by one Defendant share similarities with eleven works of one Plaintiff by mere coincidence? Is that the only plausible explanation?

Indeed, at a certain point, such sheer similarities, piling up in work after work, would demand an explanation. And the sheer volume of similarities, occurring across eleven separate sets of works, between one plaintiff and one defendant is strong indicia of copying rather than independent creation.

Indeed, such an inference is common-sense. Consider an example. Suppose an author was accused of copying from the novelist John Updike. The operative question is whether shared similarities are the result of copying or the product of coincidence?

The Updike plaintiffs point to shared similarities between one of defendant's novels and Updike's famous novel <u>Rabbit, Run</u>. The defendant claims coincidence. Then, the Updike plaintiffs point to another of defendant's novels which shares similarities with yet another Updike novel <u>Rabbit Redux</u>. Just another coincidence? Then a third novel with more similarities to yet another Updike novel: <u>Rabbit is Rich</u>. Coincidences happen, claims the defendant. Then a fourth novel by defendant is found, this time with similarities to a still yet another Updike novel: <u>Rabbit at Rest</u>. Then a fifth novel. Yet another of Defendant's novels sharing similarities with yet another Updike novel–this time <u>Rabbit Remembered</u>.

At a certain point, such claims of coincidence become downright implausible. Indeed, as such similarities mount, the "explanatory force of coincidence" will recede. <u>See</u> GOLDSTEIN ON COPYRIGHT §9.2.1. And with each additional work, containing shared similarities, between one copyright plaintiff and one defendant, the claims of coincidence become less and less credulous–the possibility of independent creation becoming more and more "improbable[.]" <u>See also</u>, <u>Kaseberg v. Conaco</u>, LLC, 260 F. Supp. 3d 1229, 1242 (S.D. Cal. 2017) ("the **probability of multiple independent creations** [...] **is highly** statistically **improbable**[.]")

71

And, notably, here it wasn't just one or two or three or four or even five works. It was eleven separate works. The sheer number of works containing similarities here supports a strong inference of copying rather than "coincidence[.]" See Skidmore, 952 F.3d at 1064.

The sheer volume of copying here, i.e., serial similarities across eleven sets of photographs, (between the works of one Plaintiff and one Defendant) provides circumstantial evidence supporting the inference "that the [eleven] works share similarities probative of copying." See id.

And, critically, these numerous similarities across eleven different works don't need to be protectible to be probative of copying. See Skidmore, 952 F.3d at 1064 (9th Cir.2020) ("such [probative] similarity may be based on the overlap of unprotectable as well as protectable elements."").

That strengthens the inference that similarities are the product of copying rather than coincidence.

### iii) Rarity or uniqueness of expression at issue

Moreover, the rarity and uniqueness of expression at issue further supports an inference of copying. After all, not all similarities create the same inference. For example, sometimes similarity are commanded by convention or necessity.

For example, "Two competing maps or telephone directories will inevitably be similar[.]" GOLDSTEIN ON COPYRIGHT §9.2.1.

So, if Defendants and Plaintiff were both map makers, then even eleven works (eleven maps) with shared similarities might be readily explainable. Or, suppose Defendants and Plaintiffs both had photos in front of famous monuments (e.g. the Statue of Liberty, the Grand Canyon, etc.). Such commonplace subject matter might well explain a coincidence.

But here, the similarities between the eleven works are of rare, odd, and unique artistic features. Nude models in odd and unnatural poses, with strange and similar costumes, and sharing curious lighting features and lighting motifs across elven photos. Such odd, unusual, and rare similarities are not the types of similarities readily-attributable to coincidences.

Thus, the rarity and uniqueness of shared expressions further supports an inference of copying rather than coincidence. That strengthens the inference that similarities are the product of copying rather than coincidence.

### iv) Timeframe after public accessibility

The tight time frame in which Defendant's numerous similar works were created also supports an inference of copying rather than coincidence. Indeed, the compressed timeframe in which Defendant, purportedly independently created so

many coincidentally similar work is highly implausible. <u>See</u> <u>Kaseberg</u>, 260 F. Supp. 3d at 1242 ("the probability of multiple independent creations **in such a tight timeframe**, [...] is highly statistically improbable"). Here, the idea that Defendant just happened to independently create numerous coincidentally similar works in one day is downright implausible. ER-230-ER231. That strengthens the inference that similarities are the product of copying rather than coincidence.

### vi) Distribution–geographic and volume

Here, Plaintiff and Defendants were both users of the social media Platform Instagram and both posted numerous of the photos involved in this dispute to that platform. From an access perspective that matters for two reasons–reasons that affect the inferences regarding access and which distinguish this case from "merely-available-online" Internet cases.

First, as discussed above, Instagram is unlimited and global in its reach. In former times, copies of a book were distributed to certain bookstores in certain geographies. Here, Defendant could have seen or accessed Plaintiffs' postings from any where in the world. Thus, Instagram's global reach undermines the pre-Internet access cases that turn on Defendant's nexus to a particular geographic location.

Second, as discussed above, Instagram, provides users with recommendations of content that are personalized to each user and their interests.(https://creators.instagram.com/blog/instagram-recommendations-eligibility-tips-creators?locale=en_US). Here, Defendants and Plaintiffs Instagram activity, as indicated by their respective postings, shares in sub-genres of similar content, involving artistic, nude Black male modeling. Instagram's algorithm looks to a users Platform based activity to recommend content "you might be interested in[.]" (https://about.instagram.com/blog/announcements/shedding-more-light-on-how-instagram-works). As such, the similarities of their Instagram posting, as a technological matter, increases the likelihood that similar content will be recommended to them by the Instagram Platform. Cf. D. Meyerend, "The algorithm knows I'm Black: from users to subjects," *Media, Culture & Society*, *45*(3), 629-645 (2023). (https://doi.org/10.1177/01634437221140539).

So, while there might be over a "billion" users on Instagram, ER-11, the District Court failed to grasp that the way that social media Platforms work, recommending content you might be interested in, would increase the chance that these two particular users' content would come into contact with each other.

Indeed, unlike traditional radio or the original Internet with passive webpages, here Instagram's recommendation algorithms coupled the shared similarities in Plaintiff's and Defendants' posting history of nude male modeling,

75

increases the inference to be drawn from the content's similarities. Moreover, the fundamental nature of a social media platform like Instagram Platform, that operate by using recommendation systems that actively, recommend specifically tailored content to users, readily distinguishes the present case from pre-Internet access cases or even the types of passive and primitive webpages in prior access case law. See, e.g., Art Attacks Ink, LLC v. MGA Enter. Inc., 581 F.3d 1138, 1145 (9th Cir. 2009) (discussing why certain primitive webpages were not likely to be encountered through a search engines "search field" due to lack of "meta tags").

### vii) Procedural Posture

At this procedural posture the allegations in the complaint must be taken "as true and making all reasonable **inferences** in the **non-movant**'s favor." Altmann v. Republic of Aus., 317 F.3d 954, 962 (9th Cir. 2002). Notably, the complaint alleges that Defendant actually viewed his works—*i.e.*, alleges direct access. ER-129 ¶12 ("Defendants *viewed* Plaintiff's works[.]"). ER-129¶12. That allegation of direct access satisfied the second element of a copyright claim.

But beyond that allegation of direct access, the complaint is replete with a host of probative factual allegations from which to infer copying. First, there's the objective similarities between the works themselves–including, inter alia, similarities in content (nude, male modeling); the costumes (naked men wrapped in

chains); and idiosyncratic use of lighting to obscure sex organs. Beyond, that there the sheer volume of similarities–serial similarities across eleven separate works of one defendant and one plaintiff; the rarity and uniqueness of the strange similarities between the works, and the downright implausibly compressed timeframe in which defendant was purported creating numerous coincidentally similar works. Finally, there is the technological nature of the Instagram Platform and the way it interacts with such similar and niche content.

All of this taken together provides ample factual basis from which to infer that the similarities here were attributable to copying as opposed to coincidence. Or, at least, a reasonable juror could so find. Indeed, copying is the far more likely explanation. See Kaseberg, 260 F. Supp. 3d at 1242 ("the **probability of multiple independent creations** [...] **is highly** statistically **improbable**[.]").

## CONCLUSION

This Court should reverse and remand.

Date: May 28, 2024                    Respectfully submitted,

                                      DIGITAL JUSTICE FOUNDATION

                                      */s/ Gregory Keenan*
                                      Gregory Keenan
                                      DIGITAL JUSTICE FOUNDATION
                                      81 Stewart Street
                                      Floral Park, NY 11001
                                      (516) 633-2633
                                      Gregory@DigitalJusticeFoundation.org

                                      *Attorney for Appellants*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned hereby certifies that there are no related cases:

    (a)  There is no other case pending in this Court that arises out of the same case in the District Court.

    (b)  There is no other case pending in this Court raising the same or closely related issues.

    (c)  There is no other case pending in this Court involving the same transaction or event.

Date: May 28, 2024          Respectfully submitted,

                    */s/ Gregory Keenan*
                    Gregory Keenan

79

# FORM 8 CERTIFICATE OF COMPLIANCE

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-55418

I am the attorney or self-represented party.

**This brief contains 11,596 words,** including 396 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Gregory Keenan*          **Date** May 28, 2024
    *(use "s/[typed name]" to sign electronically-filed documents)*

80

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit via the appellate CM/ECF system.


Date: May 28, 2024                     Respectfully submitted,

                                       */s/ Gregory Keenan*
                                       Gregory Keenan